Next case for argument, McCormick v. Independence Life and Annuity and Company, Mr. Burnett. Thank you, Your Honor. May it please the Court, my name is George Burnett. I represent Joseph and Mary McCormick in their case against Independence Life. As the Court knows, the McCormick's purchased a variable life insurance policy from Independence Life. Because I represent the appellants, I think it would be appropriate if I focused on the reasons that we lost at the district court. I think we need to begin with a discussion of subject matter jurisdiction. It looks to me like the amount in controversy is about $44,000, the amount of the contested interest. And that's, you know, even a judge can figure out that that's less than $75,000. Don't we have a problem? I don't think we have a problem, Your Honor, for two reasons. Number one, this case was actually started in state courts and removed. Which does not affect the court's subject matter jurisdiction, obviously. At the time it was pleaded in state court, the allegation was twofold. Number one, that the McCormick's had been double-charged interest, and that figure is subsequently about $44,000. And there was an allegation asking the court to declare that the policy loan should be... Was there any conceivable legal basis for that request? Yes. At the district court level, Mr. McCormick believed that the interest and earnings on the subaccounts should have exceeded the loan. No, that's not what I asked. I asked, is there any conceivable legal basis for that request? If a complaint is filed and says, we want the gross national product of Ghana, that's outré. It doesn't create federal jurisdiction. The question I'm asking, I can see that this is a dispute about interest. I don't see how, as a legal matter, this could be a dispute about the loan balance. So if you could give me some help to show that this was a legitimate legal issue. The best I can tell you, because of the passage of time, is that at the time the complaint was filed, Mr. McCormick's... No, look, the belief of the plaintiff has nothing to do with whether it is a disputable legal issue. If you could cite some state law authority or a statute or a decision, that might show me that there was a plausible, non-wacky basis for the claim. Is there any? Yes, the allegation would be a breach of contract because there were two components to this. Component number one was the interest claim. Component number two was the claim for declaratory relief that $70,000 should be forgiven. Okay, but is... I will stop after this. Is there any legal authority for that claim? Do you have, for example, a state case saying that if an insurer mischarges on interest, then the loan balance must be forgiven? No, there is no... Is there any legal authority for that kind of claim in any state? Not that I'm aware of. So, as far as we know, it is utterly wacky. No, and the reason for it is a factual basis. The factual basis is there was earnings that were supposed to have been achieved on the sub-accounts. Mr. McCormick believed that the earnings on the sub-accounts had been understated by Independence Life to the point of exceeding the loan balance. Now, that proves... You're just not dealing with my question. McCormick can believe that all he wants, but unless there is some legal authority to turn that belief into a remedy, there's a problem. And that's why I keep asking for legal authority. And the best legal authority I can give the court is the common law on breach of contract. Which, in the 700 or so years of the common law, has, according to you, never once produced a decision providing such a remedy. No, I think that the claim was, and I'm going to irritate the court again by repeating this, but the claim was that the earnings on the sub-accounts had been understated. And by understating those earnings, the contract had been breached. That's the best I can do. It proved to be wrong. And when it was wrong, it was withdrawn. But the court subject matter jurisdiction is measured at the beginning of the case when the complaint is filed, not as facts subsequently prove. Was there not a securities fraud claim? I'm sorry, Your Honor? Was there not a securities fraud claim in the case? There was a securities fraud claim which failed for the statute of repose. That is part of the district court's ruling, and it has not been appealed. You say in your jurisdictional statement that the amount of controversy is $114,000. The amount of controversy at the time the case was filed was $114,000. But now it's dwindled to $44,000? It's dwindled below $75,000 to $44,000. I see. So you accept the fact that your client still owes the $70,000 on the loan? Yes. The loan balance. Yes, I think that he owes. But initially you had thought that the loan balance should have been reduced to zero. Is that the idea? Based on his calculations, which, as I have indicated, proved to be wrong. The question before the court presently is whether the policy clearly and unambiguously, before I leave subject matter jurisdiction, I should point out that the district court did ask the question about subject matter jurisdiction at our Rule 16 conference and was persuaded at that point in time. But it seems a little odd. I mean, even if they overcharged him interest or underpaid him interest, why would that wipe out the loan balance? His theory was that he had had the policy in place for a very long period of time. For much of it, it was a very bull market in the various areas that the sub-accounts were invested and that he should have earned better than he did. Should have earned enough so that it would wipe out his debt to the insurance company? That's what his theory was. Was there evidence of that ever presented? The calculations that he provided to me at the beginning of the case established that. So he actually analyzed the performance of the stocks or bonds in the sub-accounts, and he thought that added up to at least $70,000. Is there any evidence of that? There was no evidence that ever proved that that was true. As a matter of fact, we had a CPA analyze the loss, and the CPA came up with the conclusion that the loss in the sub-accounts may be off, but it was off by a negligible amount and it wasn't worth pursuing. Well, the problem is pursuing Judge Easterbrook's question. If there was some legal basis for thinking that the loan balance might be zero, that would be fine. But if he says something which is clearly shown by the analyst to be groundless, then there wouldn't have been a basis for a federal suit, right? I am not... You can't just say something. You can't just make an assertion. There has to be some basis for thinking it's true. Otherwise, you could always get into federal court, right? I didn't make this assertion to get in federal court. I made this assertion as part of the claim in state court where it's waived if it's not pleaded, and it was based on Mr. McCormick's analysis, and he's got an MBA. So it was not groundless. At the time, it was made, and when it was proved false, it was withdrawn. I see my time is up. Well, you didn't really have a chance to make your argument. Why don't you take another five minutes or so? Thank you, Your Honor. Let me get directly to the points where I think we failed to persuade the district court. The district court concluded that this policy was clear and unambiguous. It had informed the McCormicks that if they did not write a check for interest, that interest would be added to the loan. Fund transfer would occur from their subaccounts, and they would be charged interest on that interest. There are two. They would be paid interest. Paid interest, and then they would be paid. Then that's the second point of concern, but let me go to that right away. The district court gave special emphasis to the notion that the McCormicks' funds from their subaccounts would be transferred to Independence Life's general account, and they would be paid interest on that. And I think the district court said that even in the world of finance, where things can get very arcane, that is nothing that would suggest anything but this was interest loaned. No, it was collateral. They were increasing the insurer, that is, was increasing its collateral on the loan because the principal was increasing by virtue of the unpaid interest. That's exactly right. And if the policy clearly and unambiguously informed the McCormicks that that would occur, that would be entirely appropriate. But our point is that the policy said nothing about that. If you look on page 21. Well, that's the only reasonable interpretation of the policy language. I think that's the import of the district court's opinion here. Any contrary interpretation would be unreasonable because the insurer is not going to pay interest on money that is paid to it. Unless it's a loan. Exactly. I can't think of a good example. No, unless these are your funds, your client's funds. These are still your client's funds, so they're not interest payments being made to the insurer. It's a transfer of your client's funds from the subaccounts to the client's general account fund to collateralize the increased principal of the loan by virtue of the nonpayment of the interest. So your client is still getting paid interest. Four percent. Charged interest of 4.7 percent on an increased loan amount, but not told in the policy that this is what's going to happen. And the only other point I would make in deference to the court's grace in giving me additional time is that the big difference is that this was money, this interest, that was already due in owing. Just as I can't think of a case or a situation where interest is paid on somebody else's money, I can't think of a situation where cash funds are transferred in payment of a matured debt and called collateral. Well, no, that's the point. They're not being transferred in payment of anything. That's not a reasonable interpretation of policy language. They're being transferred to collateralize the increased principal of the loan. It's not an interest payment that is being automatically deducted. It's a transfer of the insured's own funds between the two accounts. Why would Independence Life collateralize a debt with cash? That's what has happened here, and that's what was so misleading about this policy. Have I answered your question at least as best as I can? Thank you. Oh, thank you very much, Mr. Bernhardt. Ms. Robinson? May it please the Court? My point today is very simple. This case boils down to the plain meaning of a contract. And the best indicator of that, I think, is plaintiff's inability to engage on the actual language of the contract in support of their argument. They have pointed to no language in the contract that provides that interest on the loan does not accrue. They have pointed to no language in the contract providing that it automatically and mysteriously wipes out the accruing interest the moment that it accrues. They've literally pointed to no policy language that supports their position. On the other hand, the plain language – Before you go much further on the merits, maybe you ought to address the subject matter jurisdiction question that was raised. Yes. Unfortunately, I was retained to represent the defendants subsequent to the earlier proceedings in the case, so I can't speak to what went on in state court or at the Rule 16 conference that was referenced. I do know in response to Your Honor's question that there was no securities claim until the contract was amended after the case was already in federal court. At least that's my understanding. So at the time of removal, there was no securities fraud claim. That is my understanding, and I certainly understand the point that merely seeking declaratory relief that would have wiped out the loan may be insufficient to establish jurisdiction, but I can't speak to the discussion that occurred previously.  Yes. Should I proceed to address the policy language? In any event, the language of the policy makes clear that accruing interest can remain unpaid. The language of the policy makes clear that the accruing interest can only be repaid under three scenarios, none of which has occurred here, the death of the insured, the surrender of the policy, or payment of the accrued interest by sending funds either to the executive office or an agency of independence. And the policy also makes clear that the transfer of funds from the subaccounts to the general account is simply a transfer from one pocket of the policy owner to another. That transfer still results in a situation where there is no change whatsoever in the cash value of the policy, and beyond that, 4% interest is credited to the policy when the funds are transferred. As the district court pointed out, there isn't any scenario under which that can be construed as a repayment of the loan, and nothing that the McCormick's lawyer has indicated is to the contrary. Instead, much of the briefing is focused on addressing extrinsic evidence, which is not something that needs to be considered given the plain language of the policy. There also appears to be a great deal of confusion between the distinction between the cash value of the policy, which remains unchanged when the funds are transferred between the subaccount to the general account, and the net cash value of the policy, which is what you get upon surrender of the policy. And at that point would reflect a deduction for the loan and the approved interest. Beyond that, the policy does indicate exactly how the loan can be repaid. A payment can be made to the executive offices or agencies of Independence Life. There's no allegation whatsoever in the complaint that that occurred. The other consequences of the interpretation that plaintiffs are urging this court to adopt would be absurd. If funds being transferred to the general account would result automatically in the extinguishment of the loan interest, the same thing would happen when the loan initially occurred, and there would be no such thing either as an outstanding policy loan or outstanding accrued interest, and neither scenario is consistent with the plain language of the policy. Plaintiffs also argue that because Independence owns the general account, the transfer as funds must mean that the accrued interest was repaid. That, too, is an interpretation that makes no sense because under that interpretation, when the original loan transfer occurred, it would simply have disappeared, and when policyholders choose to make investment allocations to the general account of the life insurance company, that would be, in effect, a corporate contribution. So both because the language of the policy is clear, plaintiffs can point to no language that supports their position, and the interpretation that they urge would result in absurd consequences. In effect, no repayment of the loan, no repayment of the interest. At the same time that the policyholder's cash value continues to be credited with the transfer and interest is paid to the policyholder, we would urge this court to adopt the plain meaning of the policy and affirm. Okay. Thank you, Ms. Robinson. So, Mr. Burnett, do you have anything further? Just two very brief points. Sure. The first point is that the suggestion is there's no language in the policy that supports our position. Context is everything in this particular case. This is page 21 of the appendix, page 8 out of the policy. There's a passage that talks about policy loans. It is followed by three paragraphs and a section, separate section, by a passage called interest on loans. If you read the passage on interest on loans, it says, essentially, independence of life will charge 4.7% interest, that it's accrued daily, it's due at the end of the policy year, and if it's not paid at the end of the policy year, it's added to the principle of the loan. There is nothing in that particular passage dealing with interest on loans that informs the McCormicks that money will be transferred from the subaccounts to the general account so as to cover their unpaid interest. The policy loan section does have such a passage. The second paragraph of that says assets equal to the amount of the loan will be taken from the subaccounts. The assets will be transferred to any general account. To our general account, we'll earn interest at the rate of 4%. It says these assets, the assets taken for the policy loan. An ordinary person reading this would say, when I borrow money, assets taken from my subaccounts will collateralize that loan. The difference in this case is between interest and the loan amount is the difference between a matured and unmatured loan. I see my time is up. Thank you. Okay. Well, thank you very much to both counsels.